Beckwith, J.
The action is brought to recover damages for injuries alleged to have been sustained by the plaintiff by reason of his wrongful ejectment from the defendant’s train at Tonawanda, while a passenger thereon from Niagara Falls to Buffalo.
The evidence given by the plaintiff on the trial tended to establish the following facts and circumstances. On the 12th day of August, 1883, the plaintiff purchased from the defendant’s agent, at its Black Rock station in the city of Buffalo, a regular ticket, entitling him to a passage over the defendant’s road to Niagara Falls and back, and paid the full price demanded therefor.
The plaintiff on the same day went to Niagara Falls on one of the trains on the defendant’s road, and one part of his ticket was taken up. About half-past five o’clock in the afternoon the plaintiff, accompanied by his wife and child, his mother, a brother and a friend, returned from their excursion about the falls to the defendant’s depot at Niagara Falls, passed into the depot yard, and after waiting there some time took seats in one of the defendant’s passenger cars, several of which were standing on the track. While waiting the plaintiff went out from the car and into the depot, and inquired of the depot master if they were on the right train—if the train was going to Buffalo—and the depot master informed him that both trains, that and another, were going to Buffalo. _ There was no placard or announcement in any form to indicate whether the train was a regular train or not.
The tickets of the plaintiff and his party were not examined at the depot, and no officer or agent of the company or other *740 person informed them that the train was not a proper one for them to take. The plaintiff returned to the car and the train started for Buffalo. Between La Salle and Buffalo, a conductor came through the car taking up the tickets. On reaching the plaintiff and taking his ticket, he threw it back saying it was not good on that train. He passed on rejecting the tickets of all the plaintiff’s party. This person so collecting the tickets was Mr. Mattice, not a regular conductor on the defendant’s road, but a charterer of this one of defendant’s trains for excursion purposes, but under the management of a regular conductor and engineer in the employment of the defendant. After this, the regular conductor, Mr. Lamontaine,,, came along, and the plaintiff asked him what was the matter with the tickets, and received the answer that they were not good on that train. Plaintiff asked him why, and was told that he would have to pay his fare or get off. The plaintiff replied that they would “see about that,” and declared that he was going to ride to Buffalo on that ticket. After a while Mattice came back, with the regular conductor and a brakeman, and told them the plaintiff was the party he wanted put off. From behind the conductor seized the plaintiff by his coat collar, and he and his assistants ejected him from the car. The evidence tends to show that he was seized and handled with unnecessary violence and that abusive language was used, and that no pains were taken to explain to him the reason why his ticket was not acceptable.
The plaintiff gave evidence also tending to show that before the train was stopped, and even before the attempt to remove the plaintiff a member of the plaintiff’s party offered to pay the fare of the whole party. The tram was advertised in the Buffalo papers as an excursion train to run to the Falls and back on the defendant’s road, but the advertisements did not show that the train was run as a private enterprise of Mr. Mattice, under a charter to him. Such was the case made by the plaintiff.
The defendant gave evidence tending to disprove several of the material averments made by the plaintiff. At the close of the evidence the defendant moved a non-suit of the plaintiff, which was granted.
We think that the non-suit was error; that, upon the conflicting testimony, the case should have been submitted to the jury.
Two or three facts are to be borne in mind. The train from which the plaintiff was ejected was the defendant’s train, run in charge of its agents. The conductor who put the plaintiff off was the employee of the defendant. The plaintiff had paid the regular fare, and had a ticket as evidence of the fact. He entered the train at Niagara *741 Falls in good faith, believing that he had a right to go on it to Buffalo. Furthermore, the defendant’s agent at the depot told him, hi answer to his inquiry, that the train was for Buffalo. If it was not a train that any passenger paying regular fare could go upon, the agent should have told him so. No notice had been brought to the plaintiff that he as a regular passenger, could not ride on it, nor had the defendant in any way, through the newspapers or otherwise, given the public notice that only those holding or taking excursion tickets could ride on this train. No placard or notice was put up on the train as it stood in the yard at Niagara Falls, and no warning in any way was given.
These circumstances, together with the information received from the depot master, justified the plaintiff in entering the car to go to Buffalo. So far as the defendant was concerned—so far as the relative rights of the plaintiff and defendant were involved—the plaintiff was rightfully there in the conveyance of the public carrier. He was not bound to seek out by inquiry the private and undisclosed arrangements between the defendant and Mattice, and the fact that excursionists were aboard, riding on reduced fares, could hardly be deemed notice that he could not ride on a ticket costing full fare.
It is clear that the cause, necessity or occasion for putting the plaintiff off was the omission of its duty on the part of the defendant. The defendant was a public carrier. It had allowed the plaintiff, who had paid the full fare from Niagara Falls to Buffalo, to enter one of its public conveyances bound for the place of his destination, under circumstances justifying his entry into the conveyance, and his belief in his right so to do, and without notice to him, of a private arrangement with Mattice that would require the plaintiff’s ejection from the car. It follows, as it seems to us, upon the case made by the plaintiff, that the act of putting the plaintiff off was the act of the defendant, and that his ejection from the train by the defendant, though induced under its obligations to Mattice, is to be deemed a violation of the rights of the plaintiff, for which the defendant is hable.
There is another ground upon which the cause should have been submitted to the jury. Upon the evidence adduced by the plaintiff, unnecessary force was used in expelling the plaintiff from the car, accompanied by abusive language.
It was not the bold case of a party determined to ride without paying fare. The plaintiff had paid full fare, and exhibited his ticket as evidence of the fact. He had entered the train with the consent of the company. The circum *742 stances, constructively at least, were an invitation to him to enter that train. He was evidently acting in good faith while he was claiming his right to ride on that train on his ticket. Under the circumstances, he was entitled to be treated with consideration and patience, and to a complete explanation as to why his ticket was not good on the train, and if he, or others of his party, after explanation, offered to pay his fare, the conductor should have taken it, for his dispute with the conductor was upon an honest difference of opinion as to his rights. He was not a disturber of the convenience of other passengers in a manner that forfeited his rights so as to justify his summary eviction from the train, for, so far as the defendant was concerned, he had entered the car under circumstances that seemed to authorize him so to do, and in reliance upon the validity of his ticket. But, according to his evidence, which, for the purposes of this appeal, must be taken to be true, he got no explanation except a curt reply that his ticket was not good, and was summarily ejected with abuse and violence.
An order for a new trial must be made, costs to abide the event.
Smith, 0. J., and Titus, J., concur.